T.C. Memo. 2003-151


UNITED STATES TAX COURT


BERNARD WILLIAM HVIDDING AND FALEASIU E. HVIDDING, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 6934-00.               Filed May 23, 2003.


Paul J. Sulla, Jr., for petitioners.

Jonathan J. Ono, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined a deficiency in petitioners' Federal income tax of $536 for 1996.  The sole issue for decision is whether petitioners are entitled to a $536 energy tax credit for 1996.  We hold that they are not.

Unless otherwise provided, section references are to the Internal Revenue Code in effect for 1996. References to petitioner are to Bernard William Hvidding.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

A. Petitioners

Petitioners resided in Kapolei, Hawaii, when they filed their petition. In 1996, petitioner was a social worker with the Department of Human Services of the State of Hawaii.

B. Hawaii Environmental Holdings

Hawaiian Environmental Holdings (HEH) is a business trust. HEH's minutes provide that the trustees have complete discretion to distribute tax credits and depreciation to its beneficiaries.

C. The Solar Hot Water System

Petitioners purchased their home in Kapolei in 1995. In 1996, Jeff Davis (Davis), a salesman for Mercury Solar, an organization engaged in the sale of solar energy heating systems, asked petitioner if he wanted to have a solar water heating system installed in his home. Davis said that petitioner could either: (a) Buy a solar water heating system to be installed in his home by Mercury Solar, or (b) buy only the energy produced by a solar water heating system owned by HEH and installed in his home. Petitioner chose to buy only the energy.

D.    Petitioner's Agreement With HEH

Petitioner entered into a Solar Energy Purchase Agreement (SEP) with HEH on December 8, 1996.  Under the SEP, HEH agreed to sell, and petitioner agreed to buy, the energy produced from the solar water heating system components owned by HEH and installed in petitioners' home.  The SEP agreement had a term of 61 months from the date the system became operational.  Petitioner agreed to make monthly payments of $50 for a 61-month period, except that the payments were $800 in month 1, $2,325 in month 7, $1,500 in month 9, and $300 in month 60.  HEH agreed that, during the term of the agreement, the solar water heating system and its installation would be free of defects and that HEH would provide, without charge to petitioner, all necessary maintenance required for a solar water heating system under normal use.  During the term of the agreement, petitioner asked HEH to repair and upgrade the solar water heating system, and HEH did so.

Petitioner signed a Beneficiary Enrollment agreement on December 8, 1996, which provided that petitioner would become a beneficiary of HEH.  Also on that day, petitioner signed a document entitled "What Did We Just Do?", which stated, inter alia, that:  (1) Petitioner was a beneficiary of HEH; (2) petitioner was buying only energy from HEH; (3) the trustees of HEH had discretion to pass solar energy tax credits and deductions through to petitioner; (4) any credits and deductions

passed through to petitioner would be reported on a schedule K-1; (5) the HEH trustees would pass through to petitioner State tax credits of $1,750 and Federal tax credits of $575; and (6) petitioner is liable for all energy payments regardless of whether any tax credits are passed through to him. Petitioner received a beneficiary certificate dated December 31, 1996, which stated that Federal energy tax credits could be allocated to him at the discretion of the trustees of HEH.

On the day petitioner entered into the SEP agreement, petitioner and HEH jointly applied for a copayment from Hawaiian Electric Company, Inc. (HELCO), the local public electric provider. HELCO offered the $800 rebate under a program intended to promote the use of solar energy for heating water. HELCO paid HEH $800 after April 4, 1997, when a Mercury Solar representative certified that Mercury Solar had installed the solar heating system in petitioners' home in accordance with the HELCO rebate program specifications.

Around the time petitioner and HEH entered into the SEP agreement, HEH agreed to pay Mercury Solar $6,125 to install the solar system on petitioners' roof. HEH agreed to pay a $4,625 downpayment less an $800 electric rebate when work was started, and $1,500 when work was finished.

Shortly after petitioner and HEH entered into the SEP agreement, petitioner signed an Option to Extend Term/Option to

Purchase Components which gave petitioner the following three options at the end of the initial term of the SEP: (1) Extend the term for an additional 61 months at a cost of $1 per month; (2) purchase the solar water heating system at its current price; or (3) have HEH remove the system. On a date not stated in the record, petitioner extended the term for 61 months.

E. Petitioners' 1996 Return

Petitioners claimed an energy credit of $536 (10 percent of $5,355)[1] on Form 3468, Investment Credit, attached to their 1996 Federal income tax return. Petitioners attached to their return a Schedule K-1, Beneficiary's Share of Income, Deductions, Credits, etc., issued to petitioner by HEH. The Schedule K-1 indicates that HEH allocated $535 to petitioner as an energy credit, but it does not indicate that HEH allocated any income to petitioner for 1996.

F. The Notice of Deficiency

On March 21, 2000, respondent issued a notice of deficiency to petitioners in which respondent determined that petitioners were not entitled to an energy tax credit because: (a) The energy leasing contract was in substance the purchase by petitioner of solar equipment, and (b) petitioner received no income as a beneficiary of the HEH trust in 1996 and thus was not

---

[1] The exhibits show that HEH agreed to pay Mercury Solar $5,325. The $30 difference between $5,355 and $5,325 is not explained in the record.

entitled to the pass through of any energy credit from HEH in 1996. Petitioners filed a petition in this Court on June 21, 2000.

G.   HEH's 1996 Income Tax Return

HEH filed its 1996 Federal income tax return (Form 1041, U.S. Income Tax Return for Estates and Trusts) on March 30, 2001. HEH reported that it had attached 130 Schedules K-1 to its return. HEH attached to its return an amended Schedule K-1 which shows the following allocations for petitioner: (a) Annuities, royalties, and other nonpassive income before directly apportioned deductions $100; (b) depreciation $120; and (c) energy credit Form 3468 $535. HEH did not send the amended Schedule K-1 to petitioner.

OPINION

A.   Background and Contentions of the Parties

The parties dispute whether petitioners are entitled to claim an energy tax credit passed through from HEH for 1996.

1.   The Energy Tax Credit

Section 38(a)(2) and (b)(1), in conjunction with section 48(a)(1) and (a)(2)(A), provides an energy tax credit equal to 10 percent of the basis of energy property placed in service during the taxable year. Individuals are not entitled to a residential energy credit after November 4, 1990. Omnibus Budget

Reconciliation Act of 1990 (OBRA), Pub. L. 101-508, sec. 11801(a)(1), 104 Stat. 1388-520.

Trusts are eligible for the energy tax credit after November 4, 1990, if they place qualifying energy property in service during the tax year.  Sec. 38.  Before enactment of OBRA, section 48(f) required trusts to apportion a qualified investment in residential energy property between the trust and its beneficiaries on the basis of the trust's income allocable to each.  Section 50(d)(6) provides that section 48(f), as was in effect on the day before enactment of OBRA, applies for purposes of calculating the energy tax credit for certain estates and trusts after OBRA.

2.   Richter v. Commissioner

In Richter v. Commissioner, T.C. Memo. 2002-90,[2] as here, a taxpayer claimed an energy tax credit passed through from HEH. The taxpayer in Richter v. Commissioner, supra, contended that HEH was entitled to an energy tax credit in 1995 for purchasing solar energy systems from Mercury Solar and, that, as a beneficiary of HEH, he was entitled to a pass through of $513 of HEH's energy credit in 1995.  The taxpayer's arrangement with HEH and Mercury Solar in Richter is substantially similar to

---

[2]   The taxpayer appealed Richter v. Commissioner, T.C. Memo. 2002-90, to the U.S. Court of Appeals for the Ninth Circuit, which dismissed the appeal under Fed. R. App. P. 42(b).  Richter v. Commissioner, No. 02-72253 (9th Cir., Oct. 2, 2002).

petitioner's arrangement with HEH and Mercury Solar.[3]  In Richter, based on former section 48(f), the legislative history, and section 1.48-6, Income Tax Regs., we said that an energy tax credit must be allocated among a trust and its beneficiaries on the same basis that the trust's income is allocable to each.  Id.

The taxpayer in Richter contended that $650 of HEH's income was allocable to him in 1995, the year in issue, because HEH was required to allocate $650 to him under the agreement.  We disagreed because HEH was required to pay the taxpayer $650 only if the taxpayer satisfied certain conditions, and we found that the taxpayer had not satisfied those conditions in 1995.  Id.

The taxpayer in Richter also contended that an amended 1995 HEH return (prepared after the taxpayer had filed the petition in that case) established that HEH had allocated $650 of income to him in 1995.[4]  We disagreed because we found the HEH amended return for 1995 and attached Schedule K-1 to be untrustworthy.  Id.  We held that the taxpayer was not entitled to energy tax credits because he had not shown that any of HEH's income was allocable to him or that HEH had allocated any of its investment in qualifying energy property to him in the year in issue.  Id.

---

[3]  We discuss petitioners' argument that this case is distinguishable from Richter v. Commissioner, supra, below at par. C.

[4]  There was no evidence in Richter v. Commissioner, supra, that the HEH amended return for 1995 was ever filed.

B.  Whether the Fact That HEH Trustees Had Discretion To
    Allocate HEH Income Satisfies the Sec. 48(f) Requirement
    That HEH's Income Be Allocable to the HEH Beneficiaries

Petitioners contend that the fact that the HEH trustees had

discretion to allocate HEH income satisfies the section 48(f)

requirement that HEH's income be allocable to the HEH

beneficiaries.  Petitioners contend that income is "allocable"

for purposes of section 48(f) if a trustee can allocate income to

a beneficiary, and that thus HEH income was allocable to

petitioner in 1996 because the HEH trustees could have allocated

income and tax credits to him in 1996.

We do not agree with petitioners' contention that the fact

that the HEH trustees had discretion to allocate HEH income to

petitioner satisfies the requirement under section 48(f) that

HEH's income be allocable to him.[5]  Tax credits are apportioned

between a trust and its beneficiaries "in accordance with their

sharing of income for tax purposes."  S. Rept. 1881, 87th Cong.,

2d Sess. (1962), 1962-3 C.B. 707, 726; H. Rept. 1447, 87th Cong.,

2d Sess. (1962), 1962-3 C.B. 405, 419.  Thus, it is not enough

that the HEH trustees had discretion to allocate income to

petitioner; the trustees must also have allocated HEH income to

him.

---

[5]  In Richter v. Commissioner, supra, we noted that HEH's
minutes state that the HEH trustees had discretion to allocate
tax benefits to beneficiaries.  However, we did not consider
whether the fact that the HEH trustees had discretion to allocate
HEH income to the taxpayer satisfied the requirement under sec.
48(f) that HEH's income be allocable to him.

C.    Whether Richter v. Commissioner Is Distinguishable

Petitioners contend that Richter v. Commissioner, supra, is distinguishable from the instant case because, in Richter, the taxpayer received no income from HEH, and HEH made no allocation of income to the taxpayer; in contrast, petitioners contend that petitioner received $800 from HEH, and HEH allocated income to petitioner as shown by HEH's filed 1996 return and attached amended Schedule K-1.  We conclude that Richter is not distinguishable for reasons discussed next.

1.    Whether HEH Allocated Income to Petitioner in 1996

Petitioners contend that, unlike the taxpayer in Richter to whom HEH did not allocate income, HEH allocated income to petitioner in 1996.  Petitioners contend that the amended Schedule K-1 attached to HEH's 1996 return establishes that HEH allocated income to petitioner in 1996.  We disagree.  The 1996 HEH return and the attached amended Schedule K-1 for petitioner were prepared 9 months after petitioners filed their petition, apparently in anticipation of trial.  Petitioner's amended Schedule K-1 was never sent to him.  Petitioners did not report any income or other item (other than the energy credit) from HEH on their 1996 return.  Petitioner's original K-1, filed with petitioners' 1996 return, does not show that there was an allocation of income; it included only an allocation of the

energy credit. That is not sufficient to entitle petitioners to claim the credit. Richter v. Commissioner, supra.

We conclude that HEH did not allocate income to petitioner in 1996.

2. Whether Petitioner Received Income From HEH in 1996

Petitioners contend that, unlike the taxpayer in Richter, HEH allocated income to petitioner and he received income from HEH in 1996. We disagree. The SEP suggests that, in 1997, HELCO paid HEH $800 for the installation of petitioner's solar heating system, and that HEH credited that amount towards petitioner's first payment under the SEP in 1997. It appears that the payment was in 1997 and thus petitioner did not receive income (in the form of a credit to his account) in 1996. Therefore, petitioner did not receive income from HEH and thus is not entitled to claim an energy tax credit in 1996.

We conclude that petitioners are not entitled to an energy tax credit of $536 in 1996 by virtue of the $800 payment from HELCO to HEH in 1997.

D. Conclusion

Based on Richter v. Commissioner, supra, and for the additional reasons stated above, we conclude that no part of HEH's income was allocable to petitioner and that HEH did not allocate any part of its investment in qualifying energy property

to petitioner in 1996.  Thus, petitioners are not entitled to the $536 energy credit claimed on their 1996 return.[6]

To reflect the foregoing,

<u>Decision will be</u>

<u>entered for respondent</u>.

---

[6]  In light of our conclusion, we need not decide whether the purported energy purchase was, in substance, a sale of solar equipment to petitioner.